**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JESUS R. GARCIA,

      Petitioner,

v.                                           Case No. 03-CV-74659-DT

THOMAS BIRKETT,

      Respondent.
_____/

**OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION AND DENYING PETITIONER'S
APPLICATION FOR WRIT OF HABEAS CORPUS**

Petitioner Jesus R. Garcia was convicted of one count of second degree murder and one count of conspiracy to commit first degree murder on September 15, 1999. (Pet'r's Application for Writ of Habeas Corpus at ¶ 2-3.) He is currently serving concurrent prison terms of 30 to 60 years for the second degree murder conviction and the conspiracy to commit first degree murder conviction. (*Id.* at ¶ 3.); (Resp't's Resp. at 1.)

The underlying incident is the shooting death of Joane Georgescu in Detroit on the night of October 12-13, 1996. (Pet'r's Application for Writ of Habeas Corpus at 3.) The victim was a bystander when David "Sonic" Eddleman, a "Cobra" gang member, committed a drive-by shooting directed at the "Street Boys" gang. (*Id.*) Petitioner was not present, but the prosecutor charged that he was the leader of the Cobras and ordered the shooting. (*Id.*) At trial, several witnesses testified regarding Petitioner's alleged control over the Cobras, and contended that he ordered all of the gang's

"missions." (See *id.* at 12.) Cobra gang member Thomas Valastek testified about going to a bar on the night of the shooting with other gang members, including Garcia, and reported that Garcia said "he wanted someone to do a mission, which meant a 'drive-by shooting.'" (*Id.* at 10.) Valastek's testimony was, however, impeached by his prior testimony in which he stated that "the night [Petitioner] allegedly ordered the mission, he watched the first Tyson-Holyfield fight at the bar," but the first Tyson-Holyfield fight occurred nearly a month later on November 9, 1996. (*Id.*) Cobra gang member Richard "Viper" Hagerman also testified that Garcia ordered a mission while members of the gang had been at a bar. (*Id.* at 12.)

Before the trial began, the prosecution filed a motion that the trial court granted in part, excluding evidence of Petitioner's alleged control of drive-by shootings committed by Cobra gang members or his alleged ordering of drive-by shootings other than the charged offense. (*Id.* at 4.) However, at trial Hagerman testified regarding these prior incidents. (*Id.* at 13.) Petitioner moved for a mistrial, but the court denied Petitioner's motion, asserting that unfair prejudice would not result as long as it was made clear that Defendant was never charged in the matters, only arrested. (*Id.* at 14.)

Defense counsel claimed that "it was intentional misconduct to tell the jury that [Petitioner] had been in prison." (*Id.* at 5.) The prosecution responded that "he did not know how he could explain the relationship between [Ricky] O'Neal [(the leader of the Gangster Disciples)] and [Petitioner] without stating they had been in prison together." (*Id.*) Ultimately, the court denied Petitioner's request, stating that it was admissible "to set forth how one or more witnesses happened to come to know one another, what transpired in terms of conversation, ways and means of doing things, etcetera." (*Id.*)

O'Neal, who entered a plea agreement that allowed him to plead guilty to lesser charges and required him to testify in the case and any legal proceedings arising from it, was later sentenced to one to four years in prison for felonious assault. (*Id.* at 17.) He testified that Petitioner sent him a letter, which contained material the prosecutor used to incriminate Petitioner. (*Id.* at 18.) Defense counsel argued against allowing O'Neal to authenticate Garcia's letter because "not even a state police expert could identify the letter as having been written by [Petitioner]." (*Id.*)

Petitioner's "Application for Writ of Habeas Corpus" asserts four grounds for relief. First, Petitioner asserts that he was "denied due process of law and/or effective assistance of counsel" when the prosecutor "improperly bolstered the credibility of key witness Ricky O'Neal, by eliciting false testimony from O'Neal and misstating the law regarding whether O'Neal had to give incriminating testimony . . . to preserve his extremely favorable plea bargain." (*Id.* at 25.) Secondly, he claims that he was denied his right to a fair trial because O'Neal was allowed to authenticate the letter at issue, even though a state police handwriting expert could not do so. (*Id.* at 27.) His third ground for relief is that the prosecutor told the jury about Petitioner's previous prison time, arrest for killing a gang member, and violation of a pretrial order preventing the presentation of evidence that Petitioner ordered other drive by shootings. (*Id.* at 29.) Finally, Petitioner asserts that he was denied his right to instructions on lesser included offenses because the trial court would not instruct the jury on felonious assault or conspiracy to commit felonious assault as lesser offenses of murder. (*Id.* at 32.)

## II.  STANDARDS

### A. Habeas Corpus

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id.* at 409.  A federal court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 410-11.

### B. Review of Report and Recommendations

The filing of timely objections requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). *See United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review, in turn, requires this court to re-examine all the relevant evidence previously reviewed by the magistrate to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1); *Bankston v. Comm'r of Soc. Sec.*, 127 F. Supp. 2d 820, 823 (E.D. Mich. 2000). The court may "receive further evidence" if desired. *Id.*

A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An "objection" that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an "objection" as that term is used in this context. A party who files timely objections to a magistrate's report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court "with the opportunity to consider the specific contentions of the parties and to correct any errors immediately." *Walters*, 638 F.2d at 949-50. The Supreme Court upheld this rule in *Thomas v. Arn,* 474 U.S. 140 (1985), a habeas corpus case. The Supreme Court noted that "[t]he filing of objections to a magistrate's report enables the district judge to

focus attention on those issues--factual and legal--that are at the heart of the parties' dispute." *Id.* at 147 (footnote omitted).

Further, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *Smith v. Detroit Federation of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A general objection to the magistrate's report has the same effect as a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. The duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

### III.  DISCUSSION

### A.  Claim I

Garcia's first contention for habeas relief is that the prosecutor elicited false testimony from O'Neal concerning his obligation to testify against Garcia as part of a plea agreement. The magistrate judge concluded that Garcia was not entitled to relief as a result of prosecutorial misconduct because Garcia has not met his burden of showing that O'Neal's testimony was false. (R & R at 15,17.)

In *Napue v. Illinois*, 360 U.S. 264, 268-69 (1959) and *Giglio v. United States*, 405 U.S. 150, 153-54 (1972), the Supreme Court held that in order to establish a due process violation, a petitioner had to show that the prosecution deliberately misled the

jury or did not correct misleading testimony about promises offered to a witness for his testimony. The *Ziegler v. Callahan*, 659 F.2d 254, 263 (1st Cir. 1981) court held that "the defendant must show that there was a promise of aid made by the Government to a key witness that was not disclosed to the jury. Second, he must demonstrate that, in the language of *Giglio* and *Napue*, 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . .'" (citing *U.S. v. Ramos Algarin*, 584 F.2d 562, 564 (1st Cir. 1988).

In the instant case, O'Neal was given a deal in exchange for his testimony, and the terms of the deal were fully explained to the jury. In addition, as noted by the magistrate judge, there is a question whether there is a potential double jeopardy problem if the prosecutor sought to rescind O'Neal's pleas agreement after he had already been sentenced. *U.S. v. Alvarez*, 66 F. Supp. 2d 1295, 1305 (S.D. Fla. 1999); *Dyer v. State*, 34 P.2d 652, 653 (Okla. Ct. Crim. App. 2001) (where a plea agreement does not explicitly provide that, if the defendant breaches the agreement, the agreement will be null and void and the original charges will be reinstated, the re-initiation of the dismissed charges based on a breach would run afoul of the Double Jeopardy Clause).

In his objections to the magistrate judge's report and recommendation, Petitioner argues that "the prosecutor improperly allowed the false testimony to stand uncorrected[,] then reiterated the misstatement of the law in his rebuttal argument." (Pet'r's Objections at 5.) Petitioner claims that "it would not have implicated O'Neal's double jeopardy protections were the prosecutor to seek to invalidate O'Neal's sentence and reinstitute sentence enhancement proceedings for a breach by O'Neal of

7

the plea agreement." (*Id.* at 3.) However, Petitioner's objections do not offer any new evidence suggesting that the testimony was false. Petitioner claims that he can "prove that substantial portions of O'Neal's testimony was false" with an evidentiary hearing. (*Id.* at 3.) But, Petitioner's objections to Claim I only restate those contained in his habeas corpus petition. In that there is no evidence that O'Neal testified untruthfully, Petitioner's objection to the magistrate judge's conclusion that defense counsel was not ineffectice for failing to object to O'Neal's testimony fails as well. Petitioner has not pointed to law that calls into question the magistrate judge's recommended analysis, and therefore his objection fails.

### B. Claim II

Garcia also argues that it was error for the trial court to allow O'Neal to "authenticate" a letter allegedly written by Garcia. Garcia argued in his petition that O'Neal was not sufficiently qualified to authenticate that the letter was written by Garcia. (*Id.* at 16.)

As the magistrate judge points out, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions," including evidentiary rules, unless it was fundamentally unfair to admit the evidence. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); (R&R at 18.) The magistrate judge correctly recommends that the letter was properly admitted under the Michigan evidentiary rules and that it was not fundamentally unfair to admit it, since Petitioner could not show

"that this otherwise properly admitted evidence was so unreliable that its admission denied him a fair trial." Mich. R. Evid. 901(b)(2); (R & R at 20.)

Petitioner's objections to this recommended finding do not illuminate any error that the magistrate judge made about the law or any evidence that he overlooked. Instead, he argues that it was fundamentally unfair to admit the letter, but he fails to assert aspects of the case or evidence that the magistrate judge overlooked in his analysis. Petitioner cannot argue that the magistrate judge's recommended conclusion (that habeas corpus is not available to correct state law errors) is wrong. *Estelle*, 502 U.S. at 67-68. Instead, Petitioner urges the court to hold an evidentiary hearing to examine the authenticity of the letter and the truthfulness of O'Neal's testimony about it. (Pet'r's Mot. For Evid. Hearing Ground II at 1.) Since Petitioner has not highlighted an error in the magistrate judge's examination, he has not raised a cognizable objection nor demonstrated that the state court decision was contrary to or an unreasonable application of law.

### C. Claim III

Garcia's third ground for requesting habeas relief is that testimony about his prior convictions and arrests was unfair. He claims that allowing "extremely prejudicial evidence into the proceedings" denied him the right to a fair trial. (Pet'r's Habeas Application at 32.) Although the magistrate judge did not specifically address the issue of the pre-trial order not to admit evidence of previous drive by shootings that Petitioner raised in his application, this does not persuade the court to reject the recommendation. The magistrate judge recognized that the Supreme Court and Sixth Circuit "have repeatedly held that a defendant is not denied a fair trial by the admission

9

of prior bad acts evidence which is relevant in the defendant's trial." *Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); Manning v. Rose, 507 F.2d 889, 893-95; (R&R at 21.)

### D. Claim IV

Finally, Petitioner is seeking relief on the grounds that the trial court denied him instructions on lesser included offenses. (Pet'r's Habeas Application at 32.) He contends that "a trial judge is required to instruct on a requested cognate lesser offense if there is evidence to support conviction of the offense." (*Id.* at 33.)

As the magistrate judge pointed out, Petitioner has not shown how the failure to give the instructions made the whole trial "fundamentally unfair." (R&R at 22.) Supreme Court precedent requires these instructions in capital cases, *See Beck v. Alabama*, 447 U.S. 625, 637 (1980), but such instructions are not required in non-capital cases. *See Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001). For example, the *Bagby v. Sowers*, 894 F.2d 792, 797 (6th Cir. 1990) court held that the failure "to instruct on a lesser included offense in non-capital cases [is not] such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."

In his objection to the magistrate judge's decision on Claim IV, Petitioner states only that the trial court refusal to give the instruction deprived him of due process and urges the court to *extend* the *Beck* holding to cases like his with non-parolable life sentences. (Pet'r's Objections at 11.) This objection does not attempt to point out an error made by the magistrate judge, but merely argues for a different result. Since

habeas relief can only be granted for state court decisions that are contrary to clearly established federal Supreme Court law, he has not stated a viable objection. The court will adopt the Report and Recommendation as to Claim IV.

### IV. Petitioner's Motions for Evidentiary Hearings

Garcia has also filed motions to hold evidentiary hearings on Claims I and II pursuant to Rule 8 of the Rules Governing Section 2254 Cases. The relevant sections of 28 U.S.C. 2254 state:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
> (A) the claim relies on--
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

28 U.S.C.A. § 2254. Rule 8 of the Rules Governing Section 2254 Cases states that the

court, "after the answer and the transcript and record of state court proceedings are filed, shall, upon a review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require." Rules Governing § 2254 Cases, Rule 8, 28 U.S.C.A. foll. § 2254; *Barber*, 276 F.Supp.2d at 706. "An evidentiary hearing in the [d]istrict [c]ourt is not mandatory unless one of the eight circumstances listed in 28 U.S.C. 2254(d) is present." *McMillan v. Barksdale*, 823 F.2d 981, 983 (6th Cir. 1987) (citing *Loveday v. Davis*, 697 F.2d 135 (6th Cir. 1983)). Furthermore, the circumstances that would require an evidentiary hearing have to be shown by the petitioner, be admitted by the state, or "otherwise appear." *Loveday*, 697 F.2d at 138. An evidentiary hearing is required only if the Petitioner did not receive a fair hearing in a state court. *Townsend v. Sain*, 372 U.S. 293, 312 (1963). Otherwise the district court judge has discretionary authority to grant or deny the hearing. *Id.* at 318.

In his "Motion for Evidentiary Hearing (Ground I)," Petitioner asserts that an evidentiary hearing is imperative because there is a "reasonable probability that the jury was improperly influenced by the mistatement of the law by the prosecutor and where the prosecutor successfully and improperly bolstered the credibility of O'Neal." (Pet'r's Mot. Ground I at 3.) Petitioner also claims that there are discrepancies between what the jury was told about the deal and what the actual terms of the agreement were. (*Id.*

at 2.) However, Petitioner has not pointed to specific discrepancies in the record, merely repeatedly contending that O'Neal's testimony was false. Petitioner is not entitled to an evidentiary hearing as to Ground I.

Similarly, Petitioner claims that a hearing is essential to examine O'Neal's claims about the letter used in the trial by the prosecution and authenticated by O'Neal. (Pet'r's Mot. Ground II at 1-2.) He claims that an evidentiary hearing would be necessary to prove this testimony [about receiving letters from Petitioner] false and fabricated." (*Id*. at 2.) For this claim, Petitioner relies on the argument that he "made a reasonable attempt to investigate and purse his claim but was thwarted by the trial court's unreasonable ruling on O'Neal's authority to authenticate the letter." (Pet'r's Ground II Mot. at 2.) An evidentiary hearing may be conducted when a petitioner diligently tried to develop the basis for his claim in the state court but could not do so. *Barber v. Birkett*, 276 F. Supp.2d 700, 706 (E.D. Mich. 2003.) He claims that at an evidentiary hearing he can present records showing that O'Neal did not receive letters from him. However, the court does not believe that such hearings are warranted in this situation. The evidence and testimony presented at trial was not shown to be "almost totally unreliable," and at trial, the judge and jury had an opportunity to weigh the reliability of the evidence and testimony. Petitioner has not raised the existence of any new evidence that he could not have attempted to explore at trial. Defense counsel did object to the admission of the evidence and the authentication of the letter, and the trial court and Court of Appeals ruled that it was properly submitted under Michigan's rules of evidence. Petitioner has failed to argue grounds on which he was denied the opportunity to pursue his claims in state court.

For the above stated reasons, Petitioner's motions for evidentiary hearings are denied.

## IV.  CONCLUSION

IT IS ORDERED that the magistrate judge's March 29, 2005 "Report and Recommendation" [Dkt. # 36] is ADOPTED and Petitioner's "Application for Writ of Habeas Corpus" [Dkt. # 1] is DENIED.

IT IS FURTHER ORDERED that Petitioner's "Motion[s] for Evidentiary Hearing," [Dkt. #s 40 & 41] are DENIED.

    S/Robert H. Cleland  
    ROBERT H. CLELAND  
    UNITED STATES DISTRICT JUDGE

Dated:  July 21, 2005

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 21, 2005, by electronic and/or ordinary mail.

    S/Lisa G. Teets  
    Case Manager and Deputy Clerk  
    (313) 234-5522

S:\Cleland\DEM\2254s\03-74659.GARCIA.OrderAdoptingRandR.2